UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

J. PEARL BUSSEY-MORICE,

        Plaintiff,

v.   Case No: 6:11-cv-970-Orl-36GJK

PATRICK KENNEDY, TIMOTHY HERBERNER, IVETTE GOMEZ, DON WILLIAMS, ROBERT OWENS, MATTHEW LEVERICH, CITY OF ROCKLEDGE, FLORIDA and GORDON HEWATT,

        Defendants.
_____/

**ORDER**

This cause comes before the Court upon Defendant City of Rockledge's ("Defendant" or "City") Second Dispositive Motion for Summary Judgment ("Motion for Summary Judgment") (Doc. 292). Plaintiff J. Pearl Bussey-Morice ("Plaintiff"), as Personal Representative of the Estate of Preston Bussey, III, filed a Response in Opposition to Defendant's Motion for Summary Judgment ("Response") (Doc. 316), to which Defendant replied ("Reply") (Doc. 323). Upon consideration of the parties' submissions, including memoranda and accompanying exhibits, and for the reasons that follow, the Court will grant Defendant's Motion for Summary Judgment.

**I.  BACKGROUND**

    **A.  Statement of Facts[1]**

---

[1] This Statement of Facts is derived primarily from the Joint Agreed Statement of Undisputed Material Facts (Doc. 321).

This case arises out of a December 19, 2009 encounter between officers of Defendant's Police Department and Preston Bussey III ("the Decedent"). *See* Doc. 243. Plaintiff is the personal representative of the estate of the Decedent. *Id.*

The parties agree that on December 19, 2009, Individual Defendants Patrick Kennedy, Timothy Herberner, Timothy Hewatt, Yvette Gomez, Don Williams, Robert Owens, and Matthew Leverich (collectively "Individual Defendants") were employed as police officers by the City of Rockledge Police Department. Doc. 321, ¶¶ 2-8. In the early morning hours of December 19, 2009, the Individual Defendants responded to a call from Wuesthoff Hospital. *Id.* at ¶ 9. Officer Leverich was the first to arrive, with Corporal Gomez and Officer Herbener arriving seconds later. *Id.* at ¶ 17. Sergeant Hewatt and Officer Owens arrived shortly thereafter. *Id.* at ¶ 20. After arriving at the hospital, Sergeant Hewatt and Corporal Gomez simultaneously deployed their Tasers.[2] *Id.* at ¶ 21.

The Decedent was pronounced dead at 2:42 a.m. on December 19, 2009. *Id.* at ¶ 22. Medical Examiner Sajid S. Qaiser, M.D., determined that the cause of death was "cocaine excited delirium," and noted other conditions, including pulmonary emphysema, interstitial pneumonitis, and lung adhesions. Office of the Medical Examiner Autopsy Findings, Doc. 222, Ex. 13.

---

[2] There is a dispute as to how many times the Decedent was tasered. Defendant Hewatt testified that he tasered the Decedent three times. SS Hewatt, p. 3. However, the Florida Department of Law Enforcement's Amended Investigative Report indicates that on the night in question, there were six different rounds of Taser deployments for a total of 35 seconds of electrical discharge. The Individual Defendants rely upon the expert opinion testimony of Mark Kroll, PhD, Doc. 222, Exs. 7-9, p. 13, and Major Steve James, Doc. 222, Ex. 4, pp. 5-10, for the proposition that the Decedent received no more than 12 seconds of electrical discharge from the Taser deployments. Because it is obliged to construe the facts in the light most favorable to Plaintiff, the Court will presume the Decedent was tasered six times for a total of 35 seconds. *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006) ("At the summary judgment stage, courts view the totality of the circumstances in the light most favorable to the nonmoving party").

### B. Procedural History

Plaintiff's Fourth Amended Complaint ("FAC"), filed on May 13, 2012, asserts three causes of action: (1) Count I - Excessive Force against the individual City of Rockledge Police Department officers, under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution; (2) Count II - State Law Wrongful Death against Defendant City of Rockledge, under Fla. Stat. §§ 768.19-768.20; and (3) Count III - State Law Wrongful Death against Defendant City of Rockledge, under a negligent training theory.  Doc. 243, ¶¶ 17-70.

## II. STANDARD

Summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) (emphasis in original).  A fact is "material" if it may affect the outcome of the suit under governing law. *Id.* at 248.

The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004).  That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case."  *Celotex Corp.*, 477 U.S. at 325.  In determining whether a genuine issue of material fact exists, the court must

consider all the evidence in the light most favorable to the nonmoving party. *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003).

### III.   ANALYSIS

#### A.  Plaintiff's Battery Claim is barred pursuant to Florida Statute § 768.28(9)(a)

The City asserts that it enjoys sovereign immunity from liability on Count II, alleging battery, pursuant to Florida Statutes section 768.28(9)(a), which provides that "[t]he state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent … committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a). The City argues that Plaintiff explicitly alleges that the Individual Defendants acted in a manner that would immunize the City from tort liability. *Id.* at 10; *see* FAC, Doc. 243, ¶¶ 22, 28, 34, 40, 46, 52, 58 (alleging that Defendants Kennedy, Herberner, Hewitt, Gomez, Williams, Owens and Leverich acted in a manner that "…shows evil motive or intent, and/or shows reckless or callous indifference" with respect to their interaction with the Decedent.).

In its Response, Plaintiff argues that the Individual Defendants are not entitled to qualified immunity, and the City is responsible for their actions. Doc. 316, pp. 3-14. However, as the City reiterates in its Reply, the state and its municipalities have not waived sovereign immunity with respect to acts committed in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. Doc. 23, pp. 2-3; Fla. Stat. § 768.28(9)(a). Indeed, Plaintiff has not addressed this applicable statutory provision. *See* Doc. 316. The issue before the Court on the City's motion for summary judgment is not one of qualified immunity, but rather, sovereign immunity.

Both federal and Florida law demonstrate that a Florida municipality retains immunity for acts or omissions of its employees that are committed in "bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a); *Boggess v. Sch. Bd. of Sarasota County*, 2008 WL 564641, *5 (M.D. Fla. 2008); *Rudloe v. Karl*, 899 So. 2d 1161, 1164 n.2 (Fla. 1st DCA 2005). In fact, even where "malice" is not an element of a cause of action, if a plaintiff pleads that the municipal agents acted maliciously or with willful disregard for human rights, a valid claim is not stated against the municipality because of this sovereign immunity bar. *Bakri v. City of Daytona Beach*, 2009 WL 1587165, *1 (M.D. Fla. 2009); *Willis v. Dade County Sch. Bd.*, 411 So. 2d 245, 246 (Fla. 3d DCA 1982 ) ("We find no error in the determination of the trial court with respect to Count I that a complaint which alleges a 'malicious' assault and battery fails to state a cause of action pursuant to Section 728.28 Florida Statutes."); *Fletcher v. City of Miami*, 567 F. Supp. 2d 1389, 1394 (S.D. Fla. 2008) (citing *Willis* and dismissing a false arrest count against the city where the plaintiff alleged that acts were committed willfully, wantonly, and with malice); *Rudloe*, 899 So. 2d at 1164 n.2. Thus, in Florida, a governmental entity is not liable in tort where the individual employee was acting in bad faith, or with a malicious purpose, or in a manner exhibiting willful disregard for human rights. *Tepper v. Canizaro*, 2005 WL 2484644, *9 (M.D. Fla. 2005).

Here, Plaintiff alleges that the conduct of the Individual Defendants "...shows evil motive or intent, and/or shows reckless or callous indifference." FAC, Doc. Doc. 243, ¶¶ 22, 28, 34, 40, 46, 52, 58.[3]  Therefore, the City is entitled to summary judgment on Plaintiff's battery claim,

---

[3] The Court notes that in her Response to the City's Motion for Summary Judgment, Plaintiff actually refers to the Individual Defendants as having behaved "maliciously". *See* Doc. 316, p. 19.

Count 2, pursuant to Florida Statute section 768.28(9)(a).  *See Bakri*, 2009 WL 1587165, *1; *Boggess*, 2008 WL 564641, *5.

### B. Plaintiff's negligent training claim is barred by sovereign immunity

The City argues that Count III, alleging wrongful death under a negligent training theory, is barred by Florida's doctrine of sovereign immunity.  Doc. 292, p. 15; FAC, Doc. 243, ¶¶ 66-70.  Specifically, the City asserts that the Eleventh Circuit consistently holds that state negligent training claims are barred by sovereign immunity because they involve discretionary decisions of the municipality.  *Id.* (citing *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1267 (11th Cir. 2001)).

The state of Florida and its subsidiaries, including municipalities, are generally immune from tort liability.  *See* Fla. Const., Art. X, § 13; Fla. Stat. § 768.28(1).  Though sovereign immunity is waived in certain circumstances, Florida courts have found that the waiver does not apply when the challenged acts are "discretionary" rather than merely "operational."  *Kaisner v. Kolb*, 543 So. 2d 732, 737 (Fla. 1989).  Under Florida law, a "discretionary function" is one in which "the governmental act in question involved an exercise of executive or legislative power such that, for the court to intervene by way of tort law, it inappropriately would entangle itself in fundamental questions of policy and planning."  *Cook v. Sheriff of Monroe County*, 402 F.3d 1092, 1117-18 (11th Cir. 2005) (citing *Henderson v. Bowden*, 737 So. 2d 532, 538 (Fla. 1999)).  Within the Eleventh Circuit, an act is deemed to be "discretionary" when the following conditions have been met:

> (1) the action involves a basic governmental policy, program, or objective; (2) the action is essential to the realization or accomplishment of that policy, program, or objective; (3) the action require[s] the exercise of basic policy evaluation[s],

> judgment[s], and expertise on the part of the governmental agency involved; and (4) the governmental agency involved possess[es] the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision.

*Lewis*, 260 F.3d at 1264; *Kolb*, 543 So. 2d at 737.

In contrast, an operational function is one not inherent in policy or planning but merely reflects a secondary decision as to how those policies or plans will be implemented, and is not entitled to sovereign immunity. *Cook*, 402 F.3d at 1118. For example, in *Mercado v. City of Orlando*, the Eleventh Circuit found that for the plaintiff to "state a claim for negligent training, he must show [defendant] was negligent in the implementation or operation of the training program" because "[t]he determination of the content of a training program is a discretionary function for which [defendant] is afforded sovereign immunity." 407 F.3d 1152, 1162 (11th Cir. 2005); *see Johnson v. Cannon*, 947 F. Supp. 1567, 1574 (M.D. Fla. 1996) (denying defendant's motion to dismiss negligent training claim, and finding the sheriff's failure to provide the deputy with proper training in handling traffic stops, dealing with the public, interacting with female members of the public, reporting to his supervisors, and sensitivity training constituted an operational function of the sheriff's office).

In *Lewis*, the estate of a deceased motorist sued a municipality after police shot the motorist while he was stopped at an intersection. *Lewis*, 260 F.3d at 1261. The plaintiff alleged that the city of St. Petersburg failed to properly train the law enforcement officers with respect to handling a crisis situation and the proper use of force in such a situation. *Id.* at 1265. The *Lewis* court held that because the plaintiff challenged the reasonableness of the city's policy decisions regarding what to include in police training, the discretionary function doctrine of sovereign immunity barred the negligent training claim. *Id.* at 1266.

Here, the City maintains that, as in *Lewis*, Plaintiff's negligent training claim is critical of its decisions as to how to train its officers and what subject matter to include in such training. Doc. 323, p. 5. The City further notes that the Eleventh Circuit recently relied upon sovereign immunity to affirm the entry of judgment as a matter of law with respect to a negligent training claim against the Sheriff of Monroe County, Florida. Doc. 292, p. 16 (citing *Cook*, 402 F.3d at 1118). Relying upon its prior decision in *Lewis*, the Eleventh Circuit reiterated that the conduct giving rise to the negligent training claims constituted a "discretionary" action, and that finding otherwise would amount to judicial intervention into the fundamental decision making of the other branches of government. *Cook*, 402 F.3d at 1119.

In its Response, Plaintiff appears to make two arguments. First, Plaintiff maintains that there were reasonably foreseeable damages if the City's officers were negligently trained. Doc. 316, pp. 15-17. Second, with respect to sovereign immunity, Plaintiff claims that the various training programs were not discretionary functions, and explains that she challenges the implementation and operation of the City's police training programs rather than their content. *Id.* at 16. Although Plaintiff concludes that the deposition of Individual Defendant Gordon Hewatt and the "City's policies, protocols, directives and the manufacturer's literature" unequivocally warn about the dangers of improperly deployed Tasers, the Plaintiff has not directed the Court to any specific evidence, affidavit, or manual on the record in support of its claim. *See* Rule 56 (c)(1), Fed. R. Civ. P.; Case Management and Scheduling Order, Doc. 20, Section H.[4] In fact, the Court specifically noted when deferring a decision on this issue that at the summary judgment stage it would have the opportunity to consider the entire record and determine

---

[4] A party asserting that a fact is genuinely disputed must support the assertion by citing to particular parts of materials in the record. Fed. R. Civ. P. 56 (c)(1)(A). General references to a deposition are inadequate. *See* Case Management and Scheduling Order, Doc. 20, Section H.

whether the City's actions pertaining to training were "discretionary" or "operational." *See* Order, Doc. 433, p. 4. Moreover, although Plaintiff cites *Lewis* for the proposition that a claimant must show that a training program did not involve a discretionary function in order to prevail, Plaintiff fails to distinguish the instant case from either *Lewis* or the recent Eleventh Circuit precedent, *Cook*. Doc. 316, pp. 15-17.[5]

Here, a review of the FAC indicates that Plaintiff is challenging the City's decisions regarding how to train its police officers and what subject matter to include in the training. Among other things, Plaintiff expressly asserts that the City failed to adequately, sufficiently and properly train, prepare and ready all of the named individual defendants to competently handle their interaction with the Decedent. *See* Doc. 243, p.28. The Court finds that, as in *Lewis*, Plaintiff's attempt to challenge the reasonableness of the City's training regarding the use of Tasers is barred by the discretionary function exception to Florida's waiver of sovereign immunity.[6] *Cook*, 402 F.3d at 1118; *Lewis*, 260 F.3d at 1266. The acts which Plaintiff's negligent training claim challenges are discretionary governmental functions immune from tort liability. Therefore, the City is entitled to summary judgment in its favor with respect to Count 3, as a matter of law.

Accordingly, it is hereby **ORDERED and ADJUDGED:**

1. Defendant City of Rockledge's Second Dispositive Motion for Summary Judgment (Doc. 292) is **GRANTED**. Plaintiff J. Pearl Bussey-Morice's claims against Defendant City of Rockledge, Counts 2 and 3 of the Fourth Amended Complaint, are **DISMISSED.** Final

---

[5] In fact, Plaintiff does not cite any case law supporting the proposition that a state law negligent training claim, alleging that individual officers were improperly trained by their employer with respect to the use of Tasers, can proceed against a Florida municipality. *See* Doc. 316.

[6] Having found that Plaintiff's negligent training claim is barred by state sovereign immunity, the Court need not address the City's additional argument that Plaintiff has not provided any evidence to support its claim. Doc. 292, pp. 18-19; Doc. 323, pp. 6-7.

Summary Judgment in support of the City of Rockledge will be entered by separate order at the conclusion of this case.

**DONE** and **ORDERED** in Orlando, Florida on January 7, 2013.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

**Copies furnished to:**
Counsel of Record
Unrepresented Parties