UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

J. PEARL BUSSEY-MORICE, as                    CASE NO:  6:11-cv-970-Orl-41-GJK
Personal Representative of the
Estate of Preston Bussey, III,

       Plaintiff,

vs.

PATRICK KENNEDY, TIMOTHY
HERBERNER, GORDON HEWATT,
IVETTE GOMEZ, DON WILLIAMS,
ROBERT OWENS, MATTHEW LEVERICH,
and THE CITY OF ROCKLEDGE, FLORIDA,

       Defendants.

_____/

## DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY

**COME NOW**, Defendants PATRICK KENNEDY, TIMOTHY HERBENER, DON

WILLIAMS, ROBERT OWENS and MATTHEW LEVERICH, by and through undersigned

counsel and respectfully file their Notice of Supplemental Authority in support of their Motions

for Sanctions and would state as follows:

The Defendants filed Motions for Sanctions pursuant to Rule 11 and 28 U.S.C. § 1927.

[Docs. 511, 512.] In those motions, the Defendants outlined the numerous examples of vexatious

conduct by Plaintiff's counsel that has delayed and unreasonably multiplied this litigation. The

motions also discussed examples of misconduct by Plaintiff's counsel in other proceedings

throughout the state of Florida. These were not intended as a gratuitous character attack, as

Plaintiff's counsel suggests, but in an effort to show a pattern of misconduct that has been

replicated throughout this case.

In support of those arguments, the Defendants are attaching hereto a February 11, 2015, Order from the 3rd District Court of Appeals affirming sanctions entered against Plaintiff's counsel, Mr. Kelsay Patterson, for proffering false evidence and for violating the Florida Bar Rules by impugning the integrity of the judges and attorneys in the case. *Faddis v. City of Homestead*, -- So. 3d --, 2015 WL 543128 (Fla. 3d DCA 2015) (attached as Exhibit A).

In its five-page opinion, the 3rd DCA explains in detail the conduct by Mr. Patterson leading up to those sanctions, which include (1) changing sworn testimony to fit the strategic needs of the case; (2) filing appeals that were "clearly meritless" and "lack[ed] any basis in reality;" (3) engaging in vexatious and bad faith conduct; (4) violating the ethical rules by proffering false evidence to the court; and (5) violating the ethical rules by impugning the qualifications and integrity of the judges and attorneys in the case. *Id.* The *Faddis* court made specific findings regarding the numerous examples of bad faith and vexatious conduct by Plaintiff's counsel.

A court imposing sanctions under Rule 11 is tasked with fashioning a sanction that will be sufficient to deter the offender from engaging in similar conduct in the future. Fed. R. Civ. P. 11(c)(4). The Defendants respectfully submit these examples of similar misconduct are relevant to the Court's determination of the type and level of sanctions that will be necessary to deter Plaintiff's counsel from continuing this pattern of vexatious and unethical behavior.

**I HEREBY CERTIFY** that on February 26, 2015, I electronically filed the foregoing with the Clerk of the Courts by using the CM/ECF system which will send a notice of electronic filing to Wendell T. Locke, Esq., 8201 Peters Rd., Ste. 1000, Plantation, FL 33324; Kelsay D.

Patterson, Esq., 8875 Hidden River Parkway, Ste. 300, Tampa, FL 33637-2087; Robert E. Bonner, Esq. and David R. Lane, Esq., 260 Wekiva Springs Rd., Ste. 2000, Longwood, FL 32779-5947.

*/s/ Joshua B. Walker*
JOSEPH R. FLOOD, JR., ESQ.
Florida Bar No. 0361593
JOSHUA B. WALKER, ESQ.
Florida Bar No. 0047614
Dean, Ringers, Morgan & Lawton, P.A.
Post Office Box 2928
Orlando, Florida 32802-2928
Tel:  407-422-4310     Fax:  407-648-0233
JFlood@drml-law.com
JWalker@drml-law.com
Attorneys for Defendant Officers

2015 WL 543128
Only the Westlaw citation is currently available.

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION IN THE PERMANENT
LAW REPORTS. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

District Court of Appeal of Florida,
Third District.

Johanna FADDIS, Appellant,
v.
The CITY OF HOMESTEAD, et al., Appellees.

No. 3D14–121.   |   Feb. 11, 2015.

An Appeal from the Circuit Court for Miami–Dade County, Jorge E. Cueto, Judge.

**Attorneys and Law Firms**

Kelsay Patterson (Tampa), for appellant.

Weiss Serota Helfman Pastoriza Cole & Boniske and Edward G. Guedes; Conroy, Simberg, Ganon, Krevans, Abel, Lurvey, Morrow, & Schefer and Diane H. Tutt and Dale L. Friedman (Hollywood), for appellees.

Before SHEPHERD, C.J., and SUAREZ and SALTER, JJ.

*ON ORDER TO SHOW CAUSE*

SHEPHERD, C.J.

 *1  This case is before us on the court's sua sponte order to appellant, Johanna Faddis, and her counsel, Kelsay Patterson, Esq., to show cause why they should not be ordered to compensate the appellees—City of Homestead, seven present or former members of the city council, and a private investigation firm—for appellate attorney fees and costs incurred by them in defending against the prosecution of a frivolous appeal of a trial court order, which awarded the appellees $166,000 as a sanction for Faddis and Patterson's fraud on the court. Having affirmed the appeal per curiam, without the necessity for an opinion, *Faddis v. City of Homestead,* 2014 WL 4628900 (Fla. 3d DCA Sept. 17, 2014), we now order Patterson alone to compensate appellees further and remand this case to the trial court for determination of the appropriate amount. [1]

---

[1]     This is the second appearance of this case before the court. We affirmed the trial court's dismissal of the complaint for fraud on the court in a written opinion issued September 4, 2013. *See Faddis v. City of Homestead,* 121 So.3d 1134 (Fla. 3d DCA 2013). Attorney Patterson has represented Faddis from the day the complaint was filed, and in this and the prior appeal.

The law necessary to resolve this matter is, of course, section 57.105 of the Florida Statutes (2010). The statute reads in pertinent part:

**57.105. Attorney's fee; sanctions for raising unsupported claims or defenses; exceptions; service of motions; damages for delay of litigation**

**(1) Upon the court's initiative** or motion of any party, **the court shall award a reasonable attorney's fee, including prejudgment interest, to be paid to the prevailing party** in equal amounts by the losing party and the losing party's attorney



on any claim or defense **at any time during a civil proceeding or action in which the court finds that the losing party or the losing party's attorney knew or should have known that a claim or defense when initially presented to the court or at any time before trial:**

(a) Was not supported by the material facts necessary to establish the claim or defense; or

**(b) Would not be supported by the application of then-existing law to those material facts.**

...

**(3) Notwithstanding subsections (1) and (2), monetary sanctions may not be awarded:**

(a) Under paragraph (1)(b) if the court determines that the claim or defense was initially presented to the court as a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law, as it applied to the material facts, with a reasonable expectation of success.

(b) Under paragraph (1)(a) or paragraph (1)(b) against the losing party's attorney if he or she has acted in good faith, based on the representations of his or her client as to the existence of those material facts.

**(c) Under paragraph (1)(b) against a represented party.**

§ 57.105 (emphasis added). In this case, we award fees to appellees under section 57.105(1)(b). Patterson asserted three grounds for reversal of the trial court sanction: (1) the trial court erred ab initio by dismissing the complaint as a fraud on the court without an evidentiary hearing, (2) the trial court erred by imposing sanctions against Faddis without express factual findings of bad faith, and (3) the trial court erred by imposing sanctions against Patterson without express factual findings of bad faith.

**\*2**  The first point on appeal, the trial court's dismissal of the underlying case without an evidentiary hearing, is barred by res judicata. The dismissal of the underlying case was the subject of the first appeal, not this case. In that first appeal, Patterson contended that "[t]he trial court abused its discretion in granting the defendant's motions to dismiss." We wrote:

"The trial court did not abuse its discretion in striking Faddis's pleadings and entering final judgment in favor of the defendants below, as the record amply demonstrates Faddis 'sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense.' "

*Faddis,* 121 So.3d at 1135 (internal citations omitted). A first principle of res judicata is that issues which either were or could have been raised in the original appeal are barred from being raised in a second appeal. *See Fla. Dept. of Transp. v. Juliano,* 801 So.2d 101, 105 (Fla.2001) ("[R]es judicata bars relitigation in a subsequent cause of action not only of claims raised, but also claims that could have been raised."). Any issue with the trial court's dismissal of the underlying complaint, whether with or without an evidentiary hearing, has already been decided by this court. Appellant's first point of error in this appeal is unsupported "by the application of then-existing law to [the] material facts." *See* § 57.105(1)(b).

The second point of error asserted in this appeal is that the trial court awarded sanctions against Faddis without express factual findings of bad faith. This assertion is clearly meritless as the trial court specifically delineated its factual findings of bad faith as follows:

1. As set forth in the Final Judgment, which is incorporated herein, Faddis provided contradictory sworn testimony in separate depositions that could not be reasonably explained, even by her. It is also clear from the undisputed facts of the case that Faddis changed her testimony in order to suit her strategic needs in this litigation.

2. When Faddis first testified on March 24, 2011 (during the course of [the] lawsuit brought by Shehadeh against the City for payment of his severance), and stated that "there has **never been a time that [Shehadeh] has harassed me, sexually harassed me ...**," she was represented by her own counsel, Kelsay Patterson. (Faddis Depo., March 24, 2011, p. 115) (emphasis added). At that same deposition, she stated that as to the text messages from Shehadeh, [the city manager], "I didn't taken any offense to it." (*Id.* at p. 114).

3. Faddis had also earlier told Franklin, during the City's investigation into Shehadeh's alleged misconduct while he was City Manager, that she knew of no improper or inappropriate behavior by Shehadeh towards anyone, including herself. (Faddis depo, June 25, 2012, p. 223). Franklin's investigative report was then presented to the City Council at the conclusion of the investigation. As noted in the Final Judgment, as a result of Faddis' testimony, the City settled the lawsuit with Shehadeh for $250,000.

**\*3** 4. Shortly after the current lawsuit was filed, Mr. Patterson sent an email to Shehadeh stating that Mr. Patterson had "never said that you [Shehadeh] sexually harassed her." He then confirmed that Faddis and Shehadeh had always described their relationship as "good friends" or "very similar to close cousins." He further stated that "Johanna did not receive them [text messages] nor interpret them in that [negative] fashion or regard." (Exh. 17, Faddis depo, September 10, 2012).

5. Prior to her deposition in the [sic] this case on June 25, 2012, Faddis, still represented by Mr. Patterson, had made no mention of sexual harassment in any pleadings or in avoidance of defenses raised by the City Defendants or Franklin, even though the City Defendants' defense based on public records law was clearly disclosed. (Final Judgment, p. 3).

6. On June 4, 2012, the City Defendants filed a motion for summary judgment alleging that Faddis enjoyed no privacy right with respect to the text messages since the text messages and investigative report in which they were included related to a matter of public concern and constituted public records.

7. Three weeks later, Faddis, for the first time, testified that she **was** in fact **sexually harassed** by Shehadeh. [emphasis in original]. When confronted with her prior testimony denying sexual harassment, Faddis stated that she previously "provided a water down version of the truth." (Final Judgment, pp. 3–4). Faddis was given repeated opportunities during the deposition to explain the change in testimony, but evaded responding, at one point indicating it was a matter between her and her psychologist. (Final Judgment, p. 4).

8. During the June 25, 2012 deposition, Faddis was given repeated opportunities to explain why she was changing her sworn testimony. Her answers were evasive, except insofar as they established an **unequivocal** willingness to misrepresent the truth under oath when it suited her needs. [emphasis in original].

9. In response to Defendant' amended motion for sanctions, Faddis filed an affidavit in which she stated that the reason she originally testified that she had not been harassed was because she received "threats [from Shehadeh] that lasted right up to a day before my deposition" and that she was afraid of "harsh consequences in a retaliatory, socio political way." This affidavit, filed shortly before the hearing on the Defendants' motions for sanctions, was the very first time that Faddis claimed that the reason for her prior testimony was threats from Shahedah. She never proffered that explanation during her June 25, 2012, deposition when she was repeatedly asked to explain the discrepancies. Thus, her affidavit is, itself, reflective of an additional change to her testimony to suit her litigation posture in this case. (Final Judgment, p. 5).

10. Mr. Patterson has served as counsel for Faddis since at least the time of her first deposition in March 2011 through the present. Mr. Patterson allowed Faddis to testify as she did in the June 25, 2012 deposition, notwithstanding his statements to Shehadeh that Mr. Patterson knew Faddis never felt sexually harassed. (Final Judgment, p. 5). For example:

**\*4** Q: (By Ms. Friedman): Did you tell the truth when you said he never sexually harassed you on March 24, 2011?

A: It was sexual harassment.

Q: So you didn't tell the truth under oath in your deposition, correct? Correct?

A: It was sexual harassment.

Q: And you did not tell the truth, correct?

Mr. Patterson: You got your answer. You just think that you can hit a home run, and you'd like to sit here until you get it, but you have your answer. Do you know what the difference is in what her testimony is in the deposition, and what she's answer today? You have the home run.

Ms. Friedman: Stop coaching.

Mr. Patterson: You got your answer. You can spend another 35 minutes. That doesn't mean her answer is going to change, but you can try. I'm not standing your way. It is going on for a long time, though.

Ms. Friedman: Are you done?

Q: (By Ms. Friedman): If Mike Shehadeh's conduct was sexual harassment, you did not tell the truth under oath in your deposition on March 24th, 2011, correct?

A: It was sexual harassment. I did not want to discuss it. I did not want to file anything against it.

Q: And does that justify lying under oath?

Mr. Patterson: Lying? Here we go. Argumentative.

Q: Does it justify—

Mr. Patterson: Inflammatory.

Q: —lying under oath? Does it?

Mr. Patterson: Inflammatory.

Q: Does it?

A: Ma'am, I answered the way that I answered those questions.

Q: And now I'm asking you if it's because you did not want to pursue a claim against him then, does that justify lying when you say he never sexually harassed you?

Mr. Patterson: Again, objection. The question is inflammatory.

A: I didn't want to pursue a claim against him then or now.

Q: Does it—why is it so difficult for you to just answer a question that you are obligated to answer? The question is very straightforward. You did not want to pursue a claim. I want to know if that justified stating under oath that Mr. Shehadeh never sexually harassed you.

Mr. Patterson: Objection. Asked and answered. You can answer it again.

A: I've answered it, ma'am, the way I can answer it.

Q: You haven't answered the question.

A: The way that I can answer it.

11. Mr. Patterson's e-mail to Shehadeh confirmed that he knew Faddis had always described her relationship with Shehadeh as that of "good friends" and not a situation of sexual harassment. Mr. Patterson even asked Shehadeh why he [Mr. Patterson] would ever say anything "negative" about Shehadeh. (Exh. 17, Faddis Depo., September 10, 2012).

12. **The Court finds evidence of vexatious conduct and bad faith on the part of both Faddis and Mr. Patterson.** [emphasis added].

The second point of error lacks any basis in reality.

The same findings refute the third ground asserted for reversal of the trial court's award of sanctions against Attorney Patterson. Moreover, Patterson did not name himself as an appellant in this appeal. This alone is fatal to his challenge of the trial court's monetary sanction against him. *See Due v. Tallahassee Theatres, Inc.,* 160 So.2d 169, 170–71 (Fla. 1st DCA 1964) ("... [T]he name and designation of the party appealing shall be stated in the notice of appeal, because it is only through the medium of such notice that the appellate court can determine with certainty the identity of the party over whom it has gained jurisdiction, and to whom the court shall look for compliance with its lawful orders and judgments. If the notice of appeal fails to state the name and designation of the appealing party, or parties, there is no way in which the appellate court can determine those parties over whom it has jurisdiction."). The fact that he appealed the sanction order on behalf of his client does not suffice to constitute an appeal of the order in his own right. [2] *See Id.; see also, Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 314 (1988) ("The failure to name a party in a notice of appeal is more than excusable 'informality'; it constitutes a failure of that party to appeal.").

[2]    Consequently, in the order to show cause, we also dismissed Patterson's appeal of attorney fees for lack of jurisdiction.

**\*5**  Curiously, Patterson's response to our order to show cause makes no argument on behalf of his client. [3] Rather, it is a screed following hard upon his reply brief filed in this appeal, where he insinuates that he is "being bullied" by the parties, their counsel, or the court in this case, and that a "miscarriage of justice ... is **knowingly** being perpetrated upon him," (emphasis added). He likens "the story" of the case he filed on behalf of Faddis to "the story of Fidel Castro's suffocating grip of Cuba, the Holocaust, Jim Crow laws, and Hillary Clinton." According to him, the trial court sanction—and probably, now this one as well—are part of some political scheme to silence him and his client. Patterson is grossly mistaken. This case is not about political connection, human atrocities, bullies, or, as he would have it, the ability of "strong minded individuals" to stand up for the powerless. This case is about an officer of the court who proffered false evidence in violation of the Rules Regulating the Florida Bar. *See* R. Regulating Fla. Bar 4–3.3(a)(4). It is now probably also about an attorney who has impugned the qualifications and integrity of the judges of this court, the trial court, or other officers. *See* R. Regulating Fla. Bar 4–8.2(a). [4]

[3]    Unless waived in writing, Patterson had an inherent conflict of interest in representing both himself and Faddis in this matter. *See* R. Regulating Fla. Bar 4–1.7.

[4]    Rule 4–8.2(a) reads in full:
       (a) Impugning Qualifications and Integrity of Judges or Other Officers. A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, mediator, arbitrator, adjudicatory officer, public legal officer, juror or member of the venire, or candidate for election or appointment to judicial or legal office.
       "Rule 4–8.2 is intended to preserve confidence in the judicial system and prevent disrespect for the law." *Shortes v. Hill,* 860 So.2d 1, 2 (Fla. 5th DCA 2003).

For the foregoing reasons, we order appellate attorney fees as a sanction against Kelsay Patterson for advancing a frivolous appeal, and remand this case to the trial court for a determination of amount.